**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MEGAN LUTZ-STOKER,** | : | **Civil No. 3:19-CV-1601** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.   Introduction

This case comes before us for consideration of the plaintiff's claims that a Social Security Administrative Law Judge erred in evaluating medical opinion evidence, assessing the disabling effect of a claimant's pain, and formulating a residual functional capacity assessment for the plaintiff, a younger worker in her 30's. With respect to this appeal, the Supreme Court has recently underscored for us the limited scope of our review when considering Social Security disability determinations, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis

deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, while it is apparent that the plaintiff at one time faced significant impairments due to jaw pain, when we consider the ALJ's decision through the deferential lens required by the law, we are constrained to conclude that substantial evidence supported the ALJ's decision. Mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner denying this claim.

## II.   **Statement of Facts and of the Case**

On December 29, 2015, Megan Lutz-Stoker applied for disability and supplemental security income benefits under Titles II and XVI of the Social Security Act, alleging that she had become disabled as of June, 2014. (Tr. 17, 67, 72-73, 139-55). At the time that she applied for these disability benefits, the plaintiff was 31

years old and qualified as a younger worker under the Commissioner's regulations. (Tr. 71). Lutz-Stoker was a high school graduate, had attended college, and had previously worked in the health care field. (Tr. 71-72, 183, 1432).

In her disability application, the plaintiff identified an array of medical and emotional impairments including fibromyalgia, diabetes, migraines, obesity, arthritis, depression, and anxiety, but her principal presenting physical condition was jaw pain which exacerbated both her physical and emotional impairments. (Tr. 20). This jaw pain began after Lutz-Stoker underwent surgery in 2010 and became progressively more severe over time. (Tr. 202-11).

The medical records relating to this jaw pain are both extensive and somewhat equivocal. For example, these records reveal that Lutz-Stoker repeatedly sought emergency room treatment for her pain, (Tr. 512, 558, 572, 684, 706, 714, 749, 759, 768, 780, 785, 800), but also often reflected generally unremarkable findings upon examination of the plaintiff. (Tr. 515, 574, 763, 811). Likewise, Lutz-Stoker obtained mental health treatment for depression and anxiety that she attributed to this chronic pain. (Tr. 313, 328, 337, 346, 356, 386, 406, 416, 446, 458, 976, 1511, 1553, 1722, 1742, 1752, 1790, 1828, 1846, 1868, 1911). Yet, during these sessions she often exhibited normal speech and language, intact recent and remote memory, and intact attention span and concentration, mental health status findings which

suggested some ability to work. (Tr. 319, 546, 561, 589, 600, 757, 783, 1254, 1444, 1448, 1452, 1454, 1475, 1478).

Lutz-Stoker's self-reported activities of daily living also provided a mixed medical picture. While she reported frequent, severe, and intractable pain, the plaintiff also: cared for her seven-year old son, taking him to and from school, feeding him, making dinner, and supervising his bath time; (Tr. 203) spent time with her husband - "doing chores, running errands, watching tv, doing homework with [their] son, eating dinner as a family;" (Tr. 206) regularly attended church, doctor's appointments, support group, her son's school, and boy scouts; (Tr. 206) experienced no problems with personal care; (203-04) and did not need reminders to take her medication (Tr. 204). Lutz-Stoker reported that she prepared simple meals, performed light housecleaning including laundry, shopped for groceries and clothing, got outside every day, enjoyed reading, watching television, playing games, hiking trails, playing in the creek, fishing, and attending bible studies. (Tr. 204-06). According to the plaintiff, she could follow written instructions and get along with authority figures "very well", and follow spoken instructions "well." (Tr. 207-08).

Given this profoundly equivocal clinical picture, it is hardly surprising that the medical opinion evidence was also marked by some competing and contrasting views. For example, with respect to Lutz-Stoker's physical impairments, the plaintiff

presented no treating source opinion supporting her claim of complete disability. Instead, treating source records indicated that her primary care physician cleared her for return to full-time work in February 2014, (Tr. 805, 1271), and declined to write a note excusing her from work for an extended period of time in June of 2014. (Tr. 775-76). Further, Lutz-Stoker was cleared by her doctors to return to full-time work on September 27, 2017. (Tr. 80-81). Given the paucity of medical opinion support for Lutz-Stoker's physical impairments, on February 5, 2018, the ALJ requested a medical opinion regarding her physical capacity to work from medical expert Thao Le Thanh, M.D. (Tr. 17, 2528). After reviewing Lutz-Stoker's medical records and interrogatories, Dr. Thanh concluded that her medically determinable impairments did not meet listing level severity, (Tr. 2536-38), and found that Lutz-Stoker had "no functional limitations or restrictions." (Tr. 2538).

As for Lutz-Stoker's emotional impairments, the medical opinion evidence was marked by some area of consensus, as well as contrasting opinions. Two mental health professionals opined regarding the plaintiff's ability to meet the stresses of the workplace, a consulting examining expert, Dr. Everding, and a state agency non-examining expert, Dr. Mrykalo. Dr. Everding found that Lutz-Stoker experienced only mild limitations in her ability to understand, remember, carry out complex instructions, and make judgments on complex work-related decisions, and found that she had no limitations on her ability to understand, carry out, and remember simple

instructions. (Tr. 1437). However, Dr. Everding found that Lutz-Stoker faced marked limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting, and concluded that she experienced moderate limitations when it came to interacting appropriately with the public, supervisors, and coworkers. (Tr. 1438).

In contrast, Dr. Mrykalo found that Lutz-Stoker had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and had encountered no repeated episodes of decompensation. (Tr. 951). According to Dr. Mrykalo, Lutz-Stoker could make simple work-related decisions; cope with minor work-related demands; follow simple, one-to-two step task directives; perform simple, routine-type tasks; and comprehend and retain simple task instructions. (Tr. 104). Notably, Dr. Mrykalo reached these conclusions relying, in part, upon some of the clinical findings reported by Dr. Everding, who had noted that the plaintiff stated that she was "able to do her [activities of daily living] independently" and observed that Lutz-Stoker possessed adequate language skills, coherent and goal-directed thoughts with intact memory, average intellectual functioning, and fair insight and judgment. (Tr. 109-10).

While these medical matters involved conflicting elements of proof, on one thing all parties agree—Following jaw surgery in August 2016, the plaintiff's health

improved. Thus, by September 2017, Lutz-Stoker was released by her surgeon to return to work. (Tr. 81). Lutz-Stoker is currently employed on a full-time basis. (Doc. 8 at 6).

It is against this clinical backdrop that a hearing was held on this disability application on November 7, 2017, where Lutz-Stoker and a vocational expert appeared and testified. (Tr. 65-96). Following this hearing, on July 3, 2018, the ALJ issued a decision denying this application for benefits, finding that Lutz-Stoker was capable of performing a range of light work in the national economy during the closed period of this disability claim. (Tr. 14).

In that decision, the ALJ first concluded that Lutz-Stoker met the insured status requirements of the Social Security Act through December 31, 2019 and had not engaged in any substantial gainful activity since her alleged onset of disability in June of 2014. (Tr. 19-20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Lutz-Stoker suffered from the following severe impairments: jaw pain, fibromyalgia, diabetes, migraines, obesity, arthritis, depression, and anxiety. (Tr. 20). At Step 3, the ALJ then concluded that none of the plaintiff's impairments met a Social Security listing requirement. (Tr. 20-4).

Having made these findings, the ALJ then fashioned a residual functional capacity ("RFC") for Lutz-Stoker finding that she could:

> [P]erform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The [Plaintiff] is further limited to

occupations that do not require her to climb on ladders, ropes, or scaffolds, do not subject her to frequent exposure to dangerous machinery or unprotected heights, and allow her to avoid concentrated, prolonged exposure to environments with temperature extremes, excessive noise, excessive vibration, and extreme dampness and humidity. She is also limited to occupations that require no more than simple, routine, repetitive tasks that are not performed in a fast-paced production environment and involve only simple, work-related decisions and in general, relatively few work place changes.

(Tr. 24).

In reaching this RFC assessment, the ALJ carefully considered the clinical evidence, Lutz-Stoker's self-reported activities of daily living, and the competing medical opinions. (Tr. 24-8). On this score, the ALJ gave significant weight to the physical RFC opinions expressed by Dr. Thanh, the only physician who opined regarding Lutz-Stoker's physical impairments, but imposed greater exertional restrictions upon the plaintiff than those found by the doctor. (Id.) The ALJ further concluded that the mental RFC assessment of Dr. Mrykalo deserved greater weight than Dr. Everding's opinion, noting that Dr. Everding's opinion was not entirely consistent with her reports of her clinical encounter with the plaintiff. (Tr. 28). Further, the ALJ found that Lutz-Stoker's complaints regarding the severity and persistence of her pain were only partially credible since they were not consistent with the clinical evidence and the plaintiff's reported activities of daily living. (Id.)

Having made these findings, the ALJ concluded at Step 4 of this sequential analysis that Lutz-Stoker could not return to her past work, (Tr. 29), but found at

Step 5 that there were other light work positions in the regional and national economy that Lutz-Stoker could fill. (Tr. 30). Accordingly, the ALJ held that Lutz-Stoker did not meet the stringent standard for disability set by the Social Security Act and denied this disability claim. (Tr. 31).

This appeal followed. (Doc. 1). On appeal, Lutz-Stoker advances three claims, arguing that the ALJ erred: (1) in evaluating the plaintiff's complaints of pain; (2) in basing a physical RFC upon the uncontradicted report of Dr. Thanh; and (3) in weighing the competing medical opinions of Dr. Mrykalo and Dr. Everding. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, under the deferential standard of review that applies here, we will affirm the decision of the Commissioner.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid.</u>; <u>see, e.g.</u>, <u>Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks

omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply

determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id., at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.     Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and RFC. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity ("RFC"). RFC is defined as "that which an individual is still able

to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience, and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id., at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence and Lay Testimony

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c).

In deciding what weight to accord competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. See 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources . . . ."); 20

C.F.R. § 404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by a number of different medical sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not

treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). Thus, when weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Mason</u>, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. <u>See</u> <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); <u>Turner v. Colvin</u>, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); <u>Connors v. Astrue</u>, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. <u>See e.g.</u>, <u>Thackara v. Colvin</u>, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

<u>Durden v. Colvin</u>, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

Similar considerations govern an ALJ's evaluation of lay testimony. When evaluating lay testimony regarding a claimant's reported degree of disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. <u>See</u> <u>Diaz v.</u>

Comm'r, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses . . . ."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir. 1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F. Supp. 2d 391, 402 (E.D. Pa. 2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612-13 (3d Cir. 2014).

Yet, it is also clear that:

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed. App'x 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415-16 (M.D. Pa. 2015) (footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with

respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by

medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has

received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8-9 (M.D. Pa. Sept. 30, 2015).

### D.   The ALJ's Decision in this Case is Supported by Substantial Evidence.

Our review of the factual findings and legal conclusions made by the ALJ is highly deferential. In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson v. Perales, 402 U.S. 389, 401 (1971), and "does not mean a large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but rather "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Judged against these deferential standards of review, we find that substantial evidence supported the ALJ's decision.

At the outset, with respect to the physical RFC assessment, we find that the ALJ did not err in giving weight to Dr. Thanh's opinion. In this regard, it is noteworthy that Dr. Thanh was the only medical source to opine on Lutz-Stoker's physical capabilities. Thus, there is no treating source who has claimed that Lutz-Stoker was disabled. Quite the contrary, treating source records indicated that her primary care physician cleared her for return to full-time work in February 2014, (Tr. 805, 1271), and declined to write a note excusing her from work for an extended period of time in June of 2014. (Tr. 775-76). Thus, the ALJ's decision was in accord with the only medical opinion which addressed the plaintiff's physical impairments. There is no requirement in this setting that the ALJ affirmatively seek out additional medical opinions or order further consultative examinations. Rather, it is well-settled under the Social Security Regulations that the decision to seek out further medical advice rests in the sound discretion of the ALJ, see Rosa v. Colvin, 956 F. Supp. 2d 617, 622 (E.D. Pa. 2013), and that an "ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability determination." Thompson v. Halter, 45 F. App'x 146, 149 (3d Cir. 2002); see also Mruk v. Colvin, 2014 WL 3881976, at *7 (M.D. Pa. Aug. 7, 2014). In the instant case, given Dr.

Thanh's opinion and the refusal of treating sources to opine that the plaintiff was disabled, there was no need to further develop the medical opinion evidence relating to the plaintiff's physical impairments.

Likewise, Lutz-Stoker's complaint that the ALJ erred in assigning greater weight to the psychological evaluation of Dr. Mrykalo than he afforded to the opinion of Dr. Everding also fails under the deferential standard of review we must employ in Social Security appeals. As we have noted, in this case the ALJ concluded that the mental RFC assessment of Dr. Mrykalo deserved greater weight than Dr. Everding's opinion, observing that Dr. Everding's opinion was not entirely consistent with her reports of her clinical encounter with the plaintiff, and finding that Dr. Mrykalo's evaluation was more congruent with the plaintiff's treatment records. (Tr. 28).

These are proper grounds for assessing medical opinion evidence, and substantial evidence supported the ALJ's conclusions on this score. In particular, an ALJ may conclude that discrepancies between a source's medical opinion and the source's actual treatment notes justify giving a medical source opinion little weight in a disability analysis. Torres v. Barnhart, 139 Fed. App'x 411, 415 (3d Cir. 2005). Therefore, the disparity between Dr. Everding's opinions regarding Lutz-Stoker's impairments and her treatment notes, justified the ALJ's decision to give limited weight to this opinion. Kilmer v. Berryhill, No. 4:16-CV-2542, 2018 WL 1322065,

at *8 (M.D. Pa. Jan. 12, 2018), report and recommendation adopted, No. 4:16-CV-2542, 2018 WL 1315657 (M.D. Pa. Mar. 14, 2018). Likewise, it is well settled that: "an opinion from a [medical] source about what a claimant can still do . . . would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016). Further, it is undisputed that an ALJ may discount such opinions when they conflict with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202-03 (3d Cir. 2008); Kilmer v. Berryhill, No. 4:16-CV-2542, 2018 WL 1322065, at *8 (M.D. Pa. Jan. 12, 2018), report and recommendation adopted, No. 4:16-CV-2542, 2018 WL 1315657 (M.D. Pa. Mar. 14, 2018). Therefore, the ALJ properly considered the plaintiff's activities of daily living and her frequently unremarkable treatment records when deciding to assign less weight to the opinion of Dr. Everding. There was no error here.

Finally, Luz-Stoker argues that the ALJ erred in finding that the plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. However, the ALJ discussed these reports and subjective complaints and determined that they were inconsistent with the clinical medical evidence, medical opinions, and the plaintiff's reported activities of daily living. Overall, the ALJ determined that these subjective complaints

concerning the severity of this pain and her impairments were inconsistent with the record as a whole. It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence; that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Biestek, 139 S. Ct. at 1154, supported these determinations.

We further find that the ALJ's evaluation of the lay testimony complied with the requirements prescribed by the Commissioner's regulations and the law. At bottom, it appears that the plaintiff is requesting that this court re-weigh the evidence. This we may not do. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F. Supp. 2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce</u>, 487 U.S. at 565. Here, that deferential standard is met.

In closing, we are constrained to follow the law and in this case the ALJ's assessment of the evidence complied with the dictates of the law and was supported by substantial evidence. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case and will affirm this decision.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case is affirmed and the plaintiff's appeal denied. An appropriate order follows.

Submitted this 8th day of May 2020.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
